PEOPLE ex rel. SEERY v. STURGIS, Fire Com'r.

(Supreme Court, Appellate Division, First Department. November 13, 1903.)

1. MUNICIPAL CORPORATIONS—FIRE MARSHAL—REMOVAL—RIGHT TO TRIAL.

Under Laws 1897, p. 273, c. 378, § 779, as amended by Laws 1901, p. 321, c. 466, authorizing the fire commissioner "to appoint and remove" a fire marshal for the boroughs of Manhattan, the Bronx, and Richmond, and declaring that the fire marshal shall be a member of the uniformed force of the fire department of the city of New York, and Greater New York Charter, p. 257, § 739, providing that members of the "uniformed force shall be removable only after written charges" and a hearing, the fire commissioner can only remove the fire marshal after a trial on charges sustained by proof.

Ingraham, J., dissenting.

Certiorari by the people, on the relation of Peter Seery against Thomas Sturgis, as fire commissioner, to review the determination of the fire commissioner in summarily removing the relator from the position of fire marshal in the boroughs of Manhattan, the Bronx, and Richmond. Relator reinstated.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Stephen J. O'Hare, for relator.
Terence Farley, for respondent.

HATCH, J. It appears by the return to the writ that the relator was appointed a fire marshal on the 10th day of March, 1898, pursuant to the provisions of section 779, c. 378, p. 273, of the Laws of 1897. By the provisions of that act the fire commissioner was authorized to appoint and remove at pleasure a fire marshal for the boroughs of Manhattan, the Bronx, and Richmond, the territory in which relator performed his duties. By the Laws of 1901, p. 321,

c. 466, section 779, c. 378, p. 273, of the Laws of 1897, was amended
so as to read as follows:

"The fire commissioner is hereby authorized to appoint and remove a fire
marshal for the boroughs of Manhattan, the Bronx and Richmond, and a fire
marshal to be seated in Brooklyn and to exercise his powers within the bor-
oughs of Brooklyn and Queens. Said fire marshals shall be members of the
uniformed force of the fire department of the city of New York, and within
such boroughs, respectively, to which they may be assigned, shall have and
possess all the powers heretofore conferred by law upon the fire marshal of
the corporation heretofore known as the mayor, aldermen and commonalty
of the city of New York."

On January 14, 1902, the fire commissioner notified relator that
he proposed to remove him, and allowed the relator an opportunity
of making an explanation before taking action in the premises. Up-
on such hearing discussion was had between the fire commissioner
and the relator, which related mainly to the power of the commis-
sioner to remove the relator summarily; it being the contention of
the commissioner that the power of summary removal still existed
by virtue of the provisions of section 779, and of the relator that no
such power existed, for the reason that the amendment made the re-
lator a member of the uniformed force, and that he could only be re-
moved for cause upon charges and after a trial. Following this de-
bate the commissioner issued an order removing the relator from
his position, to take effect on the 18th day of January, 1902. There-
after, and on May 16th of the same year, the relator procured to be
allowed upon his petition therefor this writ for the purpose of re-
viewing the action of the commissioner. It cannot be doubted, we
think, but that the effect of the amendment of 1901 was to make the
fire marshals members of the uniformed force of the fire department
of the city of New York from and after the date when such amend-
ment took effect. Such is its express language. Being members of
the uniformed force, they became subject to the obligations which
devolved upon them in such relation, and entitled to all of the pro-
tection which the law throws around such members. Section 739,
p. 257, of the Greater New York Charter, provides for the govern-
ment and discipline of the fire department. It is provided therein
that "officers and members of the uniformed force shall be removable
only after written charges shall have been preferred against them,
and after the charges shall have been publicly examined into, upon
such reasonable notice of not less than forty-eight hours to the per-
son charged, and in such manner of examination as the rules and
regulations of the fire commissioner may prescribe." This provi-
sion is absolute and mandatory, and is unlimited in its application, the
only requirement being that the person proceeded against must be
a member of the uniformed force. Being such member, he is to be
protected in all of his rights and privileges as such. People ex rel.
Brymer v. Gray, 32 App. Div. 463, 53 N. Y. Supp. 274. In view of
this provision of the charter, we think the first sentence of section
779 must be read in subordination to section 739, and that by virtue
of these two provisions the power of removal can only be exercised
by the commissioner after a trial upon charges sustained by proof;
otherwise the protection guaranteed to members of the uniformed

force will fail. This view harmonizes the two provisions, still retains the power in the commissioner, and protects the right of the relator as a member of the uniformed force. It follows from these views that the action of the fire commissioner in summarily removing the relator was without authority of law.

The proceedings should therefore be annulled, and the relator be reinstated in his position as fire marshal, with $50 costs and disbursements.

VAN BRUNT, P. J., and PATTERSON and LAUGHLIN, JJ., concur.

INGRAHAM, J. (dissenting). I think the action of the defendant should be affirmed. By section 779 of the charter of 1897 (chapter 378, p. 273, of the Laws of 1897) the fire commissioner was authorized to appoint and remove a fire marshal for the boroughs of Manhattan, the Bronx, and Richmond, and a fire marshal to be seated in Brooklyn, to exercise his powers within the boroughs of Brooklyn and Queens. By the amended charter of 1901 (chapter 466, p. 321, of the Laws of 1901) that section was amended by inserting, after the provision authorizing the fire commissioner to appoint and remove, the following clause: "Said fire marshals shall be members of the uniformed force." I think it was clearly the intention to provide that the fire marshals to be appointed in the future should be members of the uniformed force, and not to make the fire marshals theretofore appointed when this amendment took place members of such force. It is "the said fire marshals"—that is, the fire marshals appointed under the authority of the section as amended—that were to be members of the uniformed force. Section 722, p. 252, of the charter, provides that "the officers and members of the uniformed force and legally appointed firemen in the corporation formerly known, are hereby made members of the fire department of the city of New York, as hereby constituted, and shall be assigned to duty therein by the fire commissioner, with the rank and grade now held by them respectively, as nearly as may be practicable." Section 727, p. 253, provides that the fire commissioner shall have power to organize the fire department into such bureaus as may be convenient and necessary for the performance of the duties imposed upon him; and one bureau provided for in the section is to be charged with the investigation of the origin and cause of fires, the principal officers of which shall be called "fire marshals." Section 728, p. 254, gives to the fire commissioner power to select the heads of bureaus and assistants, and as many officers and firemen as may be necessary, provided, however, that assignments to duty and promotions in the uniformed force shall be made by the fire commissioner upon the recommendation of the chief of the department; and the section provides that promotions of officers and members of the force shall be made by the fire commissioner as provided in section 124, p. 37, of the act, on the basis of seniority, meritorious service in the department, and superior capacity, as shown by competitive examination. It is members of the uniformed force as thus appointed from which the office of

fire marshal was to be selected, as provided for by section 779, p. 273, and the object of that amendment was not, in my opinion, to make the. individuals who held the office as fire marshal when the amendments went into effect members of the uniformed force. I think the commissioner had. power to remove the fire marshal, but in making an appointment to the vacancy thus caused he was required to select the appointee from the uniformed force, and he could then only remove the person so appointed from his position of fire marshal, which would relegate him to his former position in the uniformed force.